## FIDELITY UNION CASUALTY CO. v. CAREY et al.
### No. 1613—6020.

Commission of Appeals of Texas, Section A.
Dec. 22, 1932.

Collins & Houston, of Dallas, and Lewis M. Seay, of Groesbeck, for plaintiff in error.

Mr. and Mrs. C. S. Bradley and J. E. Bradley, all of Groesbeck, and C. H. Machen, of Dallas, for defendants in error.

SHARP, J.

This is the second appeal of this cause to the Supreme Court. 25 S.W.(2d) 302. The Fidelity Union Casualty Company instituted this suit in the district court of Limestone county to set aside an award of the Industrial Accident Board in favor of Mose Carey, directing the Fidelity Union Casualty Company to pay him compensation at the weekly rate of $10.38 during the continuance of total incapacity, unless subsequently modified or terminated by agreement of the parties or further order of the Industrial Accident Board, not to exceed 400 weeks from the date of his injury. In his answer, Carey set up a cross-action alleging that his injury had permanently and totally incapacitated him for work, and praying for 400 installments of compensation at the weekly rate of 60 per cent. of his average weekly wages. He alleged that he was performing a service in the course of his employment in a line of business subject to the Workmen's Compensation Act, title 130, art. 8306 et seq., Revised Civil Statutes, as amended; that he worked in such employment and capacity for six days each week at a wage of $18 per week; that his average annual weekly wage, as defined in the act, was $18; and that his average annual wage was $936. The case was submitted to a jury on special issues, and the court, on answers of the jury, entered judgment for the defendants. The Court of Civil Appeals at Waco affirmed the judgment. 38 S.W.(2d) 169, 171.

We refer to the opinion of the Court of Civil Appeals for a more detailed statement of the nature and result of this case.

Plaintiff in error contends that in an action for compensation predicated upon average weekly wages and average annual wages, as defined in the Workmen's Compensation Act, the employee has the burden to prove his average weekly wage received in the particular employment in which he sustained the injury, and where the undisputed evidence shows that the employee received his injury while engaged in the work of a stable man or corral boss, such being a regular and necessary part of the master's business as a road contractor and hauling contractor, and within the scope of the act, but that he also worked for the same master at farm labor, an em-

ployment expressly excluded by the terms of the act and not covered by the policy, and that the wages received by the employee were paid indiscriminately for all services rendered, and it is not shown what part of the wages was paid for the work that he did in the master's business in connection with which he sustained his injury as distinguished from the work done in the hog raising business, there was no issue for the jury, and a verdict should have been instructed in favor of the insurer.

At the conclusion of the testimony, plaintiff in error requested the trial court to peremptorily instruct the jury to return a verdict for it. This request was denied.

The testimony shows that Mose Carey, a colored man, was an employee of Fred Hall, who was a teaming contractor, hauling for the public, and in connection therewith had a contract to haul swill from the city of Mexia. Hall had 10 or 12 men employed in his service, and his work was classed as an industrial vocation under the terms of the Workmen's Compensation Act. Hall carried compensation insurance with plaintiff in error. Carey was stable man or general corral boss, in fact a general handy man, and it was his duty to drive up the mules or horses in the morning, feed and harness the teams, repair harness, etc. All of the work stock was kept in a pasture of about 123 acres. Hall was also engaged in the business of raising, feeding, and shipping hogs. Carey, in connection with his other duties, hauled the swill from the city of Mexia and fed it to the hogs, and sometimes fed grain to the hogs. At the time Carey was injured he had gone to the pasture for the purpose of corralling the work stock, or some of them. He was riding one of the horses used for hauling swill, and, while attempting to drive one or more of the horses to the barn, he was thrown, and as a result thereof was totally and permanently injured.

The jury, in response to the special issues submitted, found:

(1) That Carey suffered and sustained an accidental injury while in the due course of his employment on March 23, 1927.

(2) That Carey suffered total incapacity for work as a result of the accident.

(3) That Carey suffered permanent incapacity for work as a result of the accident.

(4) That the average daily wage earned by Carey working substantially the whole of the immediately preceding year was $3.

(5) That the average weekly wage earned by Carey working substantially the whole of the preceding year was $18 a week.

(6) That manifest hardship and injustice would result if Carey was not permitted to recover in a lump sum of single compensation the amount he was entitled to.

The courts of this state have given the compensation statutes a liberal construction for the purpose of carrying out the objects for which they were enacted. Lumberman's Reciprocal Ass'n v. Behnken, 112 Tex. 103, 246 S. W. 72, 73, 28 A. L. R. 1402; Mingus v. Wadley, 115 Tex. 551, 285 S. W. 1084; Federal Surety Co. v. Ragle (Tex. Com. App.) 40 S.W.(2d) 63.

An employee hired as corral boss by a teaming contractor and injured in handling or corralling the teams is not precluded from recovering compensation by reason of the fact that some of the teams were to be used by the employee for hauling swill in connection with his employer's hog-raising enterprise, which was only an incident to his main employment, which was an insurable occupation. We find nothing in the Workmen's Compensation Act and the decisions construing that act that prohibits this construction.

The jury found, in answer to a special issue submitted, that Carey was injured while in the due course of his employment, which under the law was an insurable occupation. The Court of Civil Appeals sustained this finding, and held that it was supported by sufficient testimony.

The evidence shows that Carey had worked for Hall for approximately four years in practically the same employment. He sometimes drew $15 per week, and sometimes $20 per week. At the time of the injury he was working six days per week, and was drawing $18 per week. He usually drew $3 per day, and worked six or seven days per week.

We quote from the opinion of the Court of Civil Appeals as follows: "The evidence shows that Carey worked from six to seven days per week. He worked regularly and generally received $3 per day, sometimes more. He sometimes worked overtime and was paid extra. There is no evidence that he lost any time. If his actual earnings for the year had been divided by fifty-two, his weekly wage would doubtless have been more than that allowed by the court. The jury found his average daily wage was $3 per day and his average weekly wage was $18 per week, and the evidence supports the verdict."

The insurance company suing to set aside the compensation award could not complain that compensation was computed upon average daily wage, where consideration of total yearly earnings would have resulted in an increased weekly wage. Hartford Accident & Indemnity Co. v. Durham (Tex. Civ. App.) 222 S. W. 275; Lumbermen's Reciprocal Ass'n v. Warner (Tex. Com. App.) 245 S. W. 664; Fidelity Union Casualty Co. v. Cary (Tex. Civ. App.) 13 S.W.(2d) 993; Casualty Reciprocal Ins. Co. v. Stephens (Tex. Civ. App.) 25 S.W.(2d) 180. See also Texas Em-

ployers' Ins. Ass'n v. Storey (Tex. Com. App.) 17 S.W.(2d) 458; Petroleum Casualty Co. v. Williams (Tex. Com. App.) 15 S.W.(2d) 553.

Carey, having been employed generally as corral boss for a teaming contractor who rendered incidental services in feeding hogs for the same employer, could recover compensation on basis of his average annual wages received in all similar work done by him. Article 8309, section 1, subsection 1. See, also, Juan's Case, 125 Me. 361, 134 A. 161; Anderson v. Roberts-Karp Hotel Co., 171 Minn. 402, 214 N. W. 265; Clark v. Forest Lumber Co., 9 La. App. 639, 120 So. 88; Western Metal Supply Co. v. Pillsbury, 172 Cal. 407, 156 P. 491, Ann. Cas. 1917E, 390.

In a certain line of cases the courts hold that the compensation should be based on the wages paid by the industry in which the injured employee was working at the time of the injury, and not the actual earnings of. the employee in all similar work done by him. In some of the states the rule is controlled by statute. Quebec's Case, 247 Mass. 80, 141 N. E. 582, 30 A. L. R. 996; King's Case, 234 Mass. 137, 125 N. E. 153; Skouitchi v. Chic Cloak & Suit Co., 230 N. Y. 296, 130 N. E. 299, 15 A. L. R. 1285; Rice's Case, 229 Mass. 325, 118 N. E. 674, Ann. Cas. 1918E, 1052; Marvin's Case, 234 Mass. 145, 125 N. E. 154; Hight v. York Mfg. Co., 116 Me. 81, 100 A. 9, L. R. A. 1917E, 277; Snow's Case, 252 Mass. 426, 147 N. E. 877; Kapler v. Camp Taghconic, 215 App. Div. 51, 213 N. Y. S. 160; Walton v. Electric Service Co., 121 Kan. 480, 247 P. 846.

The pleadings and proof raised the issues submitted to the jury; and their findings thereto justified the rendition of the judgment by the trial court and fulfilled the burden placed upon Carey in order to entitle him to a recovery. If the plaintiff in error felt that the evidence raised some defensive theory that would change or defeat the claim of Carey, it had the right, if properly presented, to have the defensive issues submitted to the jury. This was not done. No such issues were submitted by the court, and none were requested. The trial court having rendered judgment for Carey and others, it will be presumed that the court found that Carey was injured while engaged in an industrial occupation, for which the insurance was carried, and that his wages were sufficient to support the judgment. Embrey v. W. L. Ligon & Co., 118 Tex. 124, 12 S.W.(2d) 106; Fidelity & Deposit Co. v. Kelsay Lumber Co. (Tex. Com. App.) 29 S.W.(2d) 1052; Texas Employers' Ins. Ass'n v. Russell (Tex. Civ. App.) 16 S.W.(2d) 321.

Because Carey as an incident to his main job as corral boss fed the swill to the hogs, which is held to be a farming industry and noninsurable (article 8306, § 2; Gordon

v. Buster, 113 Tex. 382, 257 S. W. 220; Hill v. Casualty Co. (Tex. Com. App.) 45 S.W.(2d) 566), does not defeat his right to claim compensation for injuries received while engaged in an insurable occupation. To hold otherwise would be to defeat the letter and spirit of the Workmen's Compensation Act, and thwart the proper purposes for which this law was enacted.

We have carefully examined this record in the light of the able opinion rendered by Associate Justice Alexander for the Court of Civil Appeals, and we find no reversible error.

We recommend that the judgment of the Court of Civil Appeals be in all respects affirmed.

CURETON, C. J.

Judgments of the district court and Court of Civil Appeals are both affirmed, as recommended by the Commission of Appeals.