ADOLPH JOHNSON *v.* ARTHUR F. PHAEFFLIN ET AL.

MALTBIE, C. J., BROWN, JENNINGS, ELLS AND COMLEY, JS.

Argued April 5—decided August 2, 1949.

*William J. Secor, Jr.,* with whom were *Kenyon W. Greene* and, on the brief, *J. Warren Upson,* for the appellant (plaintiff).

*Edward S. Pomeranz,* with whom was *William P. Aspell,* for the appellees (defendants).

COMLEY, J. The plaintiff was a regular, full-time employee of the Connecticut Power Company. He worked with a construction gang putting up wires and erecting steel towers and wooden poles, and because of his experience in climbing he was occasionally employed by the defendant Phaefflin, tree warden of the town of Thomaston, to assist in the trimming of trees. He did these jobs for the defendant after his working hours at the Connecticut Power Company and during days off such as Saturdays and holidays. There was no regularity or continuity in this employment. Each job was the subject of a new and separate contract for the day only, and the wages paid depended upon the type of job and the hours worked.

Prior to March 30, 1945, the plaintiff had been so engaged by the defendant on four or five different occasions. On that day, which was Good Friday, he fell

from a tree upon which he was working and sustained injuries which arose out of and in the course of his employment by the defendant. On July 18, 1945, the compensation commissioner approved a voluntary agreement which provided for compensation to the plaintiff during the period of his total incapacity at the rate of $7.50 per week. This figure was apparently based upon the assumption that he would have received $15 for his work on the day he was injured. On April 9, 1948, the commissioner granted the plaintiff's motion to open and modify the voluntary agreement upon the ground that the method therein adopted for the determination of the plaintiff's average weekly wage was contrary to law, and he made an award to the plaintiff based upon his finding that the plaintiff was entitled to compensation measured by one-half the average weekly wage of $47.50 prevailing in the locality for full-time tree workers. The defendants appealed to the Superior Court, which held that the commissioner had erred in adopting the prevailing weekly wage of full-time workers as the standard and that he should have determined what the prevailing wage was for employees engaged for one day a week to do similar work.

Ordinarily, the average weekly wage of an injured employee is ascertained by dividing the total wages received by him during the twenty-six calendar weeks immediately preceding that during which he was injured by the number of calendar weeks during which, or any part of which, he was actually employed. General Statutes, Rev. 1930, § 5238, as amended by Sup. 1941, § 704f (Rev. 1949, § 7432). The statute then provides that "When the employment previous to injury as provided above shall be computed to be less than a net period of two calendar weeks, his weekly wage shall be considered to be equivalent to the aver-

age weekly wage prevailing in the same or similar employment in the same locality at the time of injury except that, when an employer has agreed to pay a certain hourly wage. to such workmen, then the hourly wage so agreed upon shall be the hourly wage for such injured workman and his average weekly wage shall be computed by multiplying such hourly wage by the regular number of hours that is permitted each week in accordance with such agreement." Thus, when an employee has worked two weeks or more in the twenty-six week period prior to injury, it is the. wage actually received by him which is used as the basis of his compensation. But when he has worked less than two weeks, the wage actually received by him has no bearing upon his compensation, which is to be measured solely by the "prevailing" wage. Thus the commissioner in the present case rightly concluded that the voluntary agreement between the parties was founded upon a mistaken legal theory, for it used the wage actually to be paid the plaintiff for his day's work, and not the "prevailing" wage, as the basis of compensation.

The vital question in the case is whether the "prevailing" wage upon which the plaintiff's compensation should be computed is the wage earned by full-time tree workers, as ruled by the commissioner, or the wage earned by part-time tree workers engaged for one day a week, which was the standard adopted by the Superior Court. In *Mazzi* v. *Smedley Co.*, 95 Conn. 607, 112 A. 168, the plaintiff was regularly employed in his own barbershop, and in order to earn extra money he worked occasionally and irregularly for the defendant. As in the present case, there was no continuity of employment and each day's work was the subject of a separate and distinct contract. The commissioner made a pro forma award based upon the average wages

actually received by the plaintiff during the weeks that he had worked prior to his injury. We held that the commissioner erred and that the statute, then substantially the same as it is now, required that the plaintiff's compensation be ascertained in accordance with the "prevailing" wage. The sole issue before this court was whether the plaintiff, who had worked for the defendant one day in each of two weeks during the twenty-six week period prior to his injury under separate and distinct contracts of employment, should receive compensation based upon his actual earnings or upon the prevailing wage. The discussion in the opinion of the distinction between a continuous employment and separate and distinct hirings was with relation to that issue. While we there held that the amount of the award was to be determined by the prevailing wage, the question as to the manner of determining that wage was not involved, and such language in the opinion as indicates that the plaintiff's compensation should be computed in accordance with the average weekly wage for full-time workers must be read in the light of the holding in *Olivieri* v. *Bridgeport*, 126 Conn. 265, 10 A. 2d 770, in which for the first time this court was called upon to construe the statutory phrase "average weekly wage prevailing in the same or similar employment."

In that case, the plaintiff was receiving relief from the defendant city. As a relief worker he was given employment at the rate of thirty-five cents an hour for three days a week and for such extra days as might be arranged. During the week in question he had worked the first three days and then, because of a heavy snowfall, he worked on Thursday and a part of Friday, when he was fatally injured. Workers regularly employed by the city in the removal of snow received fifty cents an hour, and his dependent widow claimed compensa-

tion based upon the higher rate of pay. In dismissing this claim, we said (p. 279): "Our statute does not contain the words found in those of several other jurisdictions, that the employment to be regarded is that 'in the same class' or 'grade.' On the other hand, the statute does not make the basis of compensation the average earnings prevailing for the same or similar work. 'Employment' involves not the work alone, but its known and recognized incidents. *Anslow* v. *Cannock Chase Colliery Co.*, L. R. (1909) A. C. 435, 437; *Matter of Littler* v. *George A. Fuller Co.*, 223 N. Y. 369, 372, 119 N. E. 554; *Thibeault's Case*, 119 Me. 336, 342, 111 Atl. 491. In the case before us, the relief workers were doing the same work at the time the deceased was injured as regular city employees, but within the terms of the statute the employment was not the same. The former entered into an agreement under which they were normally employed only three days a week and were paid at the rate of thirty-five cents an hour. The average weekly wage prevailing in the same employment was that earned on an average each week by workers on relief under the conditions of their employment."

It is thus apparent that the plaintiff is not entitled to an award based upon the average weekly wage paid to full-time tree workers, for that was not his kind of employment. It is not the nature of the work but the nature of the employment that governs. He was a part-time worker, engaged irregularly and sporadically by the day only, and the Superior Court rightly held that the case must be recommitted to the commissioner for a determination of the average weekly wage obtaining in that type of employment.

As was pointed out in the *Olivieri* case (p. 280), the statutory provisions in other jurisdictions with respect to the determination of compensation for part-time

workers differ so widely from our own and from each other that authorities directly in point are not to be found. In principle, our holding is supported by *Ruppert* v. *Plattdeutsche Volksfest Verein,* 263 N. Y. 338, 341, 189 N. E. 240; *Gruber* v. *Kramer Amusement Corporation,* 207 App. Div. 564, 202 N. Y. S. 413; *Rice's Case,* 229 Mass. 325, 118 N. E. 674; *King's Case,* 234 Mass. 137, 140, 125 N. E. 153.

After the decision in the *Olivieri* case in 1940, the General Assembly added to the statute quoted above its provision concerning contracts of employment in which an hourly wage is specified. Sup. 1941, § 704f. It is apparent from the language of this amendment that it was not intended to change the rule announced in that case. Rather, its purpose was to provide a method of computing the average weekly wage under contracts of employment increasingly common in recent years wherein the rate of pay is on an hourly basis and the number of allowable working days per week is regulated by statute.

There is no error.

In this opinion the other judges concurred.